IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JILL MEHRBERG,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF COMMERCE & ECONOMIC OPPORTUNITY,<br><br>Defendant. | Case No. 18-cv-02032<br><br>Judge Mary M. Rowland |

## **MEMORANDUM OPINION AND ORDER**

Jill Mehrberg brings this employment discrimination action against the Illinois Department of Commerce & Economic Opportunity ("the Department"). She claims violations of the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The Department moves for summary judgment on all of her claims. For the reasons stated below, the Department's motion for summary judgment [79, 83] is granted.[1]

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a

---

[1] Defendant filed one version of the motion and memorandum redacted [79, 80] and a second version unredacted [83, 84].

1

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). Finally the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*. (citation omitted).

## BACKGROUND[2]

Jill Mehrberg was hired by the Department in May 2009, and in 2011 became the Senior Public Service Administrator in the Department's Office of Accountability,

---

[2] The facts in this Background section are undisputed unless otherwise noted. Defendant's Rule 56.1 Statement of Facts (Dkt. 85) is abbreviated as "DSOF". Plaintiff's Rule 56.1 Statement of Facts (Dkt. 97) is "PSOF". Plaintiff responded to Defendant's Statement of Facts at Dkt. 96 and Defendant responded to Plaintiff's Statement of Facts at Dkt. 106.

2

located in Chicago, Illinois. (DSOF ¶6).³ Mehrberg was an at-will employee who served at the discretion of the Director of the Department. (*Id*. ¶7). As a Senior Public Service Administrator, Mehrberg worked with employees of different State of Illinois agencies to create metrics, budget goals, and outcomes that aligned with the Governor's goals and objectives. She also developed and formulated policies, budgets, and procedures for agency-wide performance reviews. (*Id*. ¶8). Phil Wyatt ("Wyatt"), Chief Accountability Officer, became Mehrberg's supervisor in January 2015. (*Id*. ¶11). In April 2015, Mehrberg was offered and accepted additional duties as the Chief Results Officer for the Department. (*Id*. ¶10). In spring of 2016, Wyatt left the Department, and the Department had a transition period. (*Id*. ¶12).

Mehrberg was first diagnosed with breast cancer in 2009. (*Id*. ¶13). Following a second diagnosis of breast cancer in May of 2013, Mehrberg was "unable to return to work for an extended period of time." (*Id*.). Mehrberg has been cancer free since 2013. (*Id*.). In June 2015, Mehrberg took medical leave to attend a month long pain program. (*Id*. ¶15). She did not complete the program. (*Id*.). Mehrberg asserts that her diagnosis of breast cancer and her complications from this diagnosis which resulted in her having limited mobility and range of motion constitutes a disability.

---

³ The Department argues that Mehrberg failed to comply with Local Rule 56.1. The Court will discuss particular facts and Mehrberg's compliance with the local rule as relevant in this opinion. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014) (if plaintiff fails to respond in form required to movant's Local Rule 56.1 facts, court can accept those facts as undisputed); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (court has discretion to require parties to comply strictly with local rules and "courts are not required to wade through improper denials and legal argument in search of a genuinely disputed fact.") (cleaned up); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion.") (cleaned up).

3

(*Id.* ¶16). Mehrberg explained that her requested accommodations were "related to a cancer diagnosis, and subsequent surgeries and treatments." (*Id.* ¶17). On June 25, 2015, Mehrberg advised Wyatt and Tina Dye, Office of Human Resources specialist, that she was returning to work on June 29, 2015, and provided them with her Physician's Statement about her Return to Work. (*Id.* ¶18). Her physician, Dr. Randy Calisoff, advised that Mehrberg was approved to return to work "with no restrictions." (*Id.*, emphasis in original). On July 10, 2015, Mehrberg submitted a completed "State of Illinois Reasonable Accommodation Request for Employees" form. She provided a letter from Dr. Calisoff, which requested: an ergonomic desk with a pull out for a keyboard; a wireless mouse and keyboard; a large desk; a small desk; an ergonomic chair; a raised foot rest; space to provide stretches; and a solid wall with a door handle to attach stretch bands for exercises. (*Id.* ¶19).

The Department's Reasonable Accommodation Committee ("RAC") met to discuss Mehrberg's requests. (*Id.* ¶22). Wyatt recommended to the RAC that the Department move forward with any accommodation the RAC believes are "reasonable and applicable in order to assist Mehrberg." (*Id.* ¶24). On August 31, 2015, Mehrberg's requests were granted. (*Id.* ¶26).[4] Mehrberg subsequently followed up with certain further requests on December 8, 2015. (*Id.* ¶35). The RAC responded on March 2,

---

[4] In response to DSOF ¶26, Mehrberg responded that this was disputed in part, stating in part that it was disputed "whether the accommodations were carried out in an equitable and timely manner." (Dkt. 96, ¶26). However this response contained no citation to evidence and is legal argument. This is not an appropriate response. DSOF ¶26 is deemed admitted. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (plaintiff's Rule 56.1 responsive statement containing legal argument and conjecture was not compliant with local rule); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts.").

4

2016 informing her that all of her December 8th requests were fulfilled except for providing her a key to secure the office for her personal use only. (*Id*. ¶38).

Brittany Ladd joined the Department in mid-March 2016 as Chief Operating Officer. (PSOF ¶25; DSOF ¶63). Ladd spoke to Wyatt and several others about Mehrberg's poor performance and inability to work with others. (DSOF ¶65). She also met with Mehrberg and afterward understood others' concerns about Mehrberg's performance. (*Id*. ¶67). On April 8, 2016, Mehrberg was informed of her termination by Ladd. (*Id*. ¶71). Mehrberg was told she was terminated because the Department was going in a different direction. (*Id*.). Ladd testified that Mehrberg's performance issues had not been rectified and the challenges that people were having with working with her were not getting any easier and not getting any better. (*Id*. ¶74). Ladd testified that Mehrberg was fired based on "purely performance issues and a challenge with working with others in the department." (*Id*. ¶75).

In her amended complaint (Dkt. 22), Mehrberg alleges that the Department discriminated and retaliated against her in violation of the ADA (Count I), discriminated against her based on her age in violation of the ADEA (Count II), and terminated her in retaliation for her complaints in violation of Title VII (Count III).

## ANALYSIS

### I. ADA Claims

Mehrberg asserts three types of ADA claims: failure to accommodate, unequal treatment and retaliation. *See* Am. Compl. ¶38; Dkt. 95. *See also Youngman v. Peoria Cty.*, 947 F.3d 1037, 1042 (7th Cir. 2020) ("Discrimination [under the ADA] can take

5

the form of treating a disabled employee differently from other workers or failing to make reasonable accommodations to the known limitations of the employee."); *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020) (describing ADA retaliation claim). The Court addresses each in turn.

### a. Failure to Accommodate

An ADA failure to accommodate claim requires proof that "(1) plaintiff was a qualified individual with a disability; (2) defendant was aware of [her] disability; and (3) defendant failed to accommodate [her] disability reasonably." *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). Even assuming that the first two elements are undisputed, Mehrberg fails to show that there is any genuine issue of fact that the Department failed to accommodate her disability. *See Youngman*, 947 F.3d at 1041 ("[Defendant] was entitled to summary judgment so long as [plaintiff] failed to present evidence sufficient to create a dispute of material fact on any essential (and contested) element of his claim as to which he bears the burden of proof."). Mehrberg identifies the following as evidence of the Department's failure to accommodate: (1) it failed to engage in the interactive process with her; (2) denied her request for a modified schedule; and (3) denied her request for workspace accommodations. (Dkt. 95 at 5-6).

First, "there is no independent cause of action for breakdown of the interactive process under the ADA." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021); *see also Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 503 (7th Cir. 2020) (interactive process "is a *means* for identifying a reasonable

6

accommodation rather than an end in itself.") (cleaned up). Thus Mehrberg's contention that the Department violated the ADA by failing to engage in the interactive process fails. *See Igasaki,* 988 F.3d at 961. Next, Mehrberg argues that her request for a slightly modified schedule was denied. However, she does not dispute that in July 2015, after the Department followed up seeking more information about her request for an adjusted schedule, she informed her supervisor that she decided to keep her usual hours, and she would separately request time off without pay for doctor and therapy appointments. (Dkt. 96, ¶25; *see also* Def. Exh. 21 (Dkt. 85-21)). Mehrberg does not explain how the Department failed to reasonably accommodate her request for a modified schedule when she withdrew that request. (And she does not dispute that the Department did in fact grant the request on an interim basis, Dkt. 96, ¶26).

With respect to her request for "workspace accommodations," Mehrberg argues that the Department could not explain its denials. First, the Department accommodated all her requests except giving her a key to secure her office for her sole use. Citing Altman's deposition, Mehrberg mischaracterizes his testimony by stating that he admitted to "denying some of her requests for reasonable accommodation." (PSOF ¶15). Instead, when asked about the March 2, 2016 letter, Altman responded in the affirmative and explained that the letter stated in part, "[a]fter careful review and deliberation of your request, the Reasonable Accommodation Committee has determined that it is appropriate to complete the majority of the requested tasks." (Altman Dep. (Dkt. 97-3, pp. 84-85); *see also* Dkt. 85-49 ("March 2016 Letter")). The

7

March 2016 Letter listed Mehrberg's seven requests and stated that all were executed, with only one exception that Mehrberg was not provided a "key to secure the office for your exclusive use." Mehrberg does not explain how this demonstrates that the Department failed to accommodate her disability reasonably or explain the reasoning for its decision. Indeed, "it is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." *Igasaki*, 988 F.3d at 961 (cleaned up). *See also Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 683 (7th Cir. 2014) (plaintiff's "displeasure with the way in which [defendant] decided on that accommodation, or with its failure to provide the exact accommodation he would have preferred, is irrelevant.").

Finally, Mehrberg contends that it took three months for Altman to send her the March 2016 Letter—a letter informing her that all but one of her requests had been accommodated. Assuming Mehrberg is arguing that this was an unreasonable delay, she does not state how the delay was unreasonable. Determining if a delay in providing accommodations was unreasonable requires assessing a number of factors. *See McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020) (analysis "turns on the totality of the circumstances, including…such factors as the employer's good faith in attempting to accommodate the disability, the length of the delay, the reasons for the delay, the nature, complexity, and burden of the accommodation requested, and whether the employer offered alternative accommodations."). Mehrberg fails to address any of these factors, and the Court will not construct the argument for her.

8

*See Riley v. City of Kokomo*, 909 F.3d 182, 191 (7th Cir. 2018) ("our adversary system relies on parties to raise issues and present them in the appropriate manner."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("a person waives an argument by failing to make it before the district court.").

For these reasons, Mehrberg's failure to accommodate claim does not survive summary judgment.

### b. Discrimination

A plaintiff claiming discrimination under the ADA must show "(1) [s]he is disabled; (2) [s]he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) [her] disability caused the adverse employment action." *Igasaki*, 988 F.3d at 961. "It is essential for the plaintiff to link the adverse action with [her] disability….a plaintiff must show a genuine issue of material fact exists regarding whether [her] disability was the but for reason for the adverse action." *Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020) (cleaned up). The Department does not dispute that Mehrberg suffered an adverse employment action but contends that she is not a qualified individual with a disability and cannot show the required causal link.[5]

The Department argues that under the *McDonnell Douglas* burden-shifting framework, Mehrberg cannot show she met the Department's legitimate expectations. (Dkt. 84 at 10-12, citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)). "[A] plaintiff must state a prima facie case of discrimination by showing

---

[5] Because the Court agrees with Defendant about causation, it need not address whether Mehrberg was a qualified individual with a disability.

9

that: (1) she is a member of a protected class; (2) at the time of termination, she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than [] nondisabled employees who are similarly situated." *Aberman v. Bd. of Educ. of City of Chicago*, 242 F. Supp. 3d 672, 686–87 (N.D. Ill. 2017) (cleaned up). The "analysis of an employer's legitimate expectations does not merely consider whether a plaintiff's actual job performance was satisfactory—it is a much broader analysis, which allows fact-finders to consider factors such as insubordination and workplace camaraderie." *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014).

As to her performance, Mehrberg does not dispute a number of facts:

- Mehrberg was required to abide by the Department's policy on attendance and timekeeping, described in the Department's Handbook (DSOF ¶¶41-42).
- in 2015 and 2016, Mehrberg required more benefit time than she input in "eTime" or the Office of Accountability's calendar, requiring her to correct her requests for benefit time after having submitted them; she sometimes failed to input the leave time she required; Wyatt testified that she did not properly document her leave time or benefit time when away from her duties (*Id.* ¶¶46-47).[6]
- in October 2015, Wyatt told her that he learned she was not working her scheduled hours, he instructed her to review Department policy about hours and benefit time, abide by them, and that "[f]ailure to follow this directive will result in administrative action." (*Id.* ¶51).
- at the end of October 2015, Mehrberg and Wyatt met in person to discuss Wyatt's concerns, and Wyatt informed her that he was having difficulty reaching her on multiple occasions (*Id.* ¶52).

---

[6] Mehrberg does not dispute DSOF ¶46 or ¶47 other than to argue that they are not material facts. The Court finds that they are material to the issue of whether she was meeting the Department's legitimate employment expectations of her.

10

- at a meeting in October 2015 to address performance issues, Wyatt told Mehrberg that her work product was lacking (*Id.* ¶53).[7]
- following this meeting, Wyatt had "six to ten" phone calls with Mehrberg to discuss his dissatisfaction with her performance and to request improvement (*Id.* ¶55).
- in December 2015, Wyatt spoke with Mehrberg about complaints he received regarding her interactions with other employees and informed her that she needed to be more civil and understanding. (*Id.* ¶56).
- Wyatt testified that she had the reputation "of being somewhat abrasive" and "her likability wasn't very high", and as of January 2016, the Director's Office did not want Mehrberg involved in a particular project because she was "abrasive and intrusive to the Offices"; Wyatt discussed these issues with Mehrberg (*Id.* ¶¶48, 50). In March 2016, Wyatt reported to Emily (Monk) Dodson, COO, about the ongoing issue with Mehrberg's attendance (*Id.* ¶58).
- in March 2016, Wyatt spoke to Teresa Smith (Deputy Director of Human Resources) about Mehrberg's performance issues, including that Mehrberg was not completing her assigned work and that Wyatt had spoken to Mehrberg in October 2015 about "eTime" (*Id.* ¶¶59-61).
- on March 21, 2016, Wyatt emailed Smith about issues with Mehrberg's timekeeping, work hours, and her negative interactions with co-workers (*Id.* ¶62).
- Ladd (who became COO in mid-March 2016) and Monk (who was COO in 2015-2016) discussed issues with Mehrberg's performance, including that individuals had issues working with her (*Id.* ¶64).
- Before terminating Mehrberg, Ladd spoke with the following people about Mehrberg's poor work performance and inability to work with others: Winters, Esposito, Hoffman, Monk and Wyatt (*Id.* ¶ 65).[8]
- Before terminating Mehrberg, Ladd met with her to discuss a work presentation; Ladd was aware of issues with Mehrberg's performance, ability to work with others and take feedback. After this meeting, Ladd was frustrated with Mehrberg's quality of work and understood others' concerns about Mehrberg's performance (*Id.* ¶¶ 66-68).
- Monk was asked to take over Wyatt's role in spring 2016 and Monk requested that Mehberg not report to her because she found Mehrberg difficult to work with and not a valuable team member (*Id.* ¶¶ 69-70).

---

[7] This fact is deemed undisputed. Mehrberg's argument (Dkt. 96, ¶53) that Wyatt did not use the exact word "majority" is not of consequence.

[8] Mehrberg's response says "disputed," however her response only addresses Esposito's involvement. However in his deposition, Esposito testified that he was in conversations where it was addressed "that there were performance concerns with Jill Mehrberg." Esposito Dep. (Dkt. 97-1), pp.35-38. Plaintiff does not dispute that Ladd spoke to the other individuals listed about Mehrberg's poor performance prior to terminating her.

11

- Ladd testified that Mehrberg's performance issues and her challenges working with others were not improving. Because the specific department division was taking on a more prominent role, the division needed to be more efficient and collaborative. Ladd testified that Mehrberg was fired based on "purely performance issues and [her] challenge working with others in the department." (*Id*. ¶¶ 74-75).

All of this *undisputed* evidence shows that Mehrberg was not meeting the Department's legitimate expectations: Mehrberg was terminated because of issues with her performance and working with others, failure to follow time-keeping and attendance policies, and failure to make the improvements requested. This dooms her discrimination claim. *See Bunn*, 753 F.3d at 685 (plaintiff did not make out a prima facie case of discrimination because the undisputed evidence showed he did not meet his employer's legitimate expectations); *see also Garcia v. Bd. of Inspectors of Joliet Pub. Sch. Dist. 86*, 2020 WL 6275001, at *16 (N.D. Ill. Oct. 23, 2020) ("[the employer is] entitled to set its own expectations for employees' performance."); *Flores v. Preferred Tech. Grp.*, 182 F.3d 512, 515 (7th Cir. 1999) ("[i]nsubordination is a legitimate, nondiscriminatory reason for firing an employee").[9]

Moreover, as the Department points out, Mehrberg failed to respond to the argument that she was not meeting work expectations. Without directly responding to the argument, Mehrberg contends that her "last two evaluations were exceptional" and that she received a promotion. (Dkt. 95 at 11). (The Department concedes she took on additional duties in 2015 but disputes that this was a "promotion."). But prior

---

[9] *See Slaugher v. Winston & Strawn LLP*, 2018 WL 3405476, at *2 (N.D. Ill. July 12, 2018) (where there was no need to proceed past step of deciding whether plaintiff established a prima facie case, defendant was entitled to summary judgment on plaintiff's discrimination claim).

12

positive performance reviews and a promotion do not create a genuine issue of fact that she was meeting work expectations "*at the time of* [her] termination." *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (emphasis added); *see also Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009) (the "court looks to whether she was performing adequately at the time of the adverse employment action"). The performance reviews Mehrberg references pre-dated the period of April 1, 2015 to March 31, 2016. (*see* Dkt. 106-4 "2016 Performance Review"). In other words, they did not concern the year prior to her termination. Mehrberg's reliance on earlier performance evaluations and her disagreement with the Department's assessment of her performance does not bar summary judgment. As the Seventh Circuit explained in *Fane v. Locke Reynolds, LLP*, "[w]hether Fane had notice of her transgressions, whether termination was an extreme response to them, and whether Locke Reynolds followed its own progressive disciplinary procedures are irrelevant to the issue of whether Fane was meeting the firm's legitimate expectations." 480 F.3d 534, 540 (7th Cir. 2007).

In addition, under *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Court asks "could a reasonable juror conclude that [s]he would not have suffered the same adverse employment action if [s]he were not disabled and everything else had remained the same?" *Kurtzhals,* 969 F.3d at 729.[10] Considering the evidence as

---

[10] Courts still apply the *McDonnell Douglas* framework, although the Seventh Circuit has moved toward "considering the evidence as a whole, whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge." *Monroe v. Indiana Dep't of Transportation*, 871 F.3d 495, 504 (7th Cir. 2017) (citing *Ortiz*, 834 F.3d 760). The Court addresses the Department's argument under *McDonnell Douglas* and also considers the evidence as a whole.

a whole, the answer to this question is "no". As discussed, there is no disputed issue of fact that Mehrberg was terminated because of performance issues.

Still, Mehrberg argues that the Department's reasons for her termination were pretextual. She contends that it was unclear who made the decision to fire her, that her final performance evaluation was completed after she was terminated, and that McCarthy signed her termination letter even though he did not know her, why she was fired, and did not make the decision to fire her. This evidence, viewed in Mehrberg's favor, reflects a lack of communication, lack of clear termination procedures, some uncertainty about whether Ladd made the termination decision on her own or with others, and perhaps unfairness. But Mehrberg has not "pointed to any evidence suggesting that [] the final-decision maker [] did not honestly believe [her] reasons for terminating [plaintiff's] employment." *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 507 (7th Cir. 2014). *See also Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) ("If [defendant] honestly believed the reasons it gave, however, [plaintiff] loses even if the reasons were foolish, trivial, or baseless."); *Lauth v. Covance*, Inc., 863 F.3d 708, 717 (7th Cir. 2017) ("judgments regarding the fairness of a particular action or the accuracy of an employer's belief about an employee's job performance [are not relevant]…[t]he only question that matters is whether [employer] actually believed it had a legitimate basis to terminate [plaintiff]."); *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 570 (7th Cir. 2017) (the court "is not a super personnel department that second-guesses employers' business judgments.").

In sum, Mehrberg has not raised a genuine issue of material fact that the Department discriminated against her because of her disability.

### c. Retaliation

"In order to make out a case of retaliation a plaintiff must show that: 1) [s]he engaged in statutorily protected activity; 2) [s]he suffered an adverse action; and 3) there was a causal link between the two.…the critical point is to offer evidence that would allow the factfinder to conclude that the employer took the adverse action because of the protected activity." *Pierri v. Medline Indus., Inc.*, 970 F.3d 803, 808 (7th Cir. 2020) (citation omitted).[11] Mehrberg argues that the Department "retaliated against [her] for her complaints regarding her outstanding reasonable accommodations requests." (Dkt. 95 at 14). The Department argues that Mehrberg's alleged protected activity is not actionable under the ADA and she fails to establish causation.

First, the Court agrees with the Department that the complaints Mehrberg identifies do not qualify as protected activity. "Protected activities include asserting one's rights under the Act either by seeking accommodation or by raising a claim of discrimination due to disability." *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018). *See Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 815 (7th Cir. 2015) (affirming summary judgment in defendant's favor on ADA retaliation

---

[11] The question is "whether the evidence would permit a reasonable factfinder to conclude that [plaintiff's complaints] caused the discharge.'" *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018) (quoting *Ortiz*, 834 F.3d at 765). Mehrberg relies on the "convincing mosaic" test, which is not the governing legal standard. *Ortiz*, 834 F.3d at 765.

15

claim where plaintiff did not identify evidence that he engaged in protected activity). Mehrberg does not argue that her July 2015 request for accommodation or her December 2015 email are protected activities. Indeed she does not argue that she was fired in retaliation for her requests for accommodation.

Instead Mehrberg identifies three instances of alleged complaints. (*see* Dkt. 95 at 13-14). She argues that she complained about the Department "tracking her comings and goings." (*Id.* at 13). She does not explain, however, how this is actionable protected activity for an ADA retaliation claim. Next she says she complained to Nelson that her requests for reasonable accommodations were not being fulfilled, and Nelson put Wyatt on notice of those complaints (Dkt. 95 at 13, citing PSOF ¶ 24). As the Department points out, the cited deposition testimony does not reference Mehberg's requests for accommodation. Nelson was asked about "Jill's complaints that people were monitoring her movements, things like that." (Nelson Dep. (Dkt. 85-57) pp. 63-65). Mehrberg also states that Smith testified that she was informed by Dodson, Altman and Benn in March of 2016 that there were some longstanding issues between Mehrberg and the Department regarding her requests for reasonable accommodations, and that Mehrberg was complaining. (Dkt. 95 at 13, citing PSOF ¶ 21). Smith testified that Mehrberg's accommodation requests were "longstanding", but did not discuss particular instance of Mehrberg complaining. Moreover, for each of these instances, Mehrberg does not cite evidence that Ladd was aware of her complaints. *See Hayes v. Potter*, 310 F.3d 979, 983 (7th Cir. 2002) ("the decisionmaker must have had actual knowledge of the complaint for her decision to be retaliatory.").

16

At most, the evidence Mehrberg relies on gives rise to the inference that she was complaining about her requests for accommodation not being sufficiently fulfilled. But she cannot simply repackage her failure to accommodate claim as an ADA retaliation claim. *See Rodrigo,* 879 F.3d at 243 (plaintiff could not "simply refram[e] a discrimination or accommodation claim as one for retaliation). "Courts [] do not recognize ADA retaliation claims that are simply repackaged failure to accommodate claims." *Koty v. Zaruba,* 2017 WL 4150684, at *7 (N.D. Ill. Sept. 19, 2017), aff'd sub nom. *Koty v. DuPage Cty., Illinois*, 900 F.3d 515 (7th Cir. 2018); *see also Malas v. Hinsdale Twp. District #86*, 2019 WL 2743590, at *27 (N.D. Ill. July 1, 2019) (same). Mehrberg in her response brief does not address the Department's argument that her retaliation claim is a repackaged failure to accommodate claim. *See Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) (non-moving party waives arguments not raised in its response to the moving party's motion for summary judgment).

The Court also finds that even if Mehrberg engaged in protected activity, she fails to raise a genuine issue of fact that her complaints caused her termination. As discussed, the Department had a legitimate, non-discriminatory reason for termination—her issues with performance, attendance and working with others. There is not sufficient evidence from which a reasonable fact finder could conclude that a retaliatory motive caused Mehrberg's termination. *See Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 577-78 (7th Cir. 2021) ("the evidence as a whole shows that [plaintiff's] performance was woefully deficient and that [defendant] had

17

nondiscriminatory and nonpretextual reasons to terminate her."). Mehrberg asserts that the Court should consider suspicious timing but does not identify a particular complaint close in time to her termination. *See Igasaki*, 988 F.3d at 959 (allowing typically no more than a few days to elapse between the protected activity and the adverse action). Even considering the other evidence Mehrberg relies on (McCarthy's signing of her termination letter despite not knowing her or the reason for her termination and the Department completing her final evaluation after her termination) does not create a genuine issue of fact that Mehrberg's termination was retaliatory, "especially when [her] poor performance provided the Department with a nondiscriminatory rationale for [her] termination." *Igasaki*, 988 F.3d at 960. *See also King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017) ("our concern is not whether [employer's] decision to fire [plaintiff] was correct, but whether it was *retaliatory*") (emphasis added).

Further, Mehrberg's failure to meet the Department's legitimate expectations is an additional reason that her retaliation claim does not survive summary judgment. "[I]n order to articulate a valid 'retaliation claim under the ADA, an employee must show that he was meeting his employer's legitimate employment expectations, and that he was performing his job satisfactorily.'" *Slutsky v. Jacobson Companies*, 2017 WL 2813662, at *7 (N.D. Ill. June 29, 2017) (quoting *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 602 (7th Cir. 2011).

**III. ADEA Claim**

Mehrberg alleged that the Department discriminated against her based on her age. The Department in its motion argues that Mehrberg has no evidence that her age caused any adverse employment action. In response, Mehrberg states she is not contesting Defendant's motion with respect to her ADEA claim. (Dkt. 95 at 1). Therefore summary judgment is granted in the Department's favor on Count II.

**IV. Title VII Retaliation Claim**

The Department moves for summary judgment on the Title VII claim, arguing that there is no evidence that Mehrberg engaged in protected activity under Title VII. The Court agrees. *See* 42 U.S.C.A. § 2000e-2(a) (covering discrimination based on an individual's "race, color, religion, sex, or national origin"); *see also Strong v. Quest Diagnostics Clinical Lab'ys, Inc.*, 2021 WL 354000, at *6 (N.D. Ill. Feb. 2, 2021) ("Title VII is not the appropriate mechanism through which to bring claims based on disability discrimination"). Mehrberg fails to respond to the Department's argument (and makes no mention of Title VII at all). Mehrberg has abandoned her Title VII claim. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("The obligation to raise the relevant arguments rests squarely with the parties."); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (declining to consider arguments not presented to the district court in response to summary judgment motions); *Keck Garrett & Assocs. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) (where plaintiff did not defend claim in responding to summary judgment motion on that claim, plaintiff abandoned its claim).

Summary judgment is granted in the Department's favor on Count III.

## CONCLUSION

For the stated reasons, Defendant's motion for summary judgment [79, 83] is granted. Summary judgment is granted in Defendant's favor on all of Plaintiff's claims. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff. Civil case terminated.

E N T E R:

Dated: January 3, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge